**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
UNITED STATES of AMERICA, ex rel, PREMALAL
RANASINGHE, IRENE RANASINGHE and KEERTHI
RANASINGHE,

                Plaintiffs,

       -against-                         **MEMORANDUM AND ORDER**
                                      20-CV-02890 (OEM) (LKE)

OCWEN LOAN SERVICING LLC, HSBC BANK
USA NATIONAL ASSOCIATION, US BANK
NATIONAL ASSOCIATION, MORTGAGE
ELECTRONIC REGISTRATION SYSTEM,
LEOPOLD & ASSOCIATES PLLC, and McCABE,
WEISBERG & CONWAY P.C.,

                Defendants.
------------------------------------------------------------------------X
ORELIA E. MERCHANT, United States District Judge:

        On June 30, 2020, Plaintiffs-Relators Premalal Ranasinghe, Irene Ranasinghe, and Keerthi

Ranasinghe (collectively "Relators") commenced this action against defendants Ocwen Loan

Servicing, LLC ("Ocwen"), HSBC Bank USA National Association ("HSBC"), U.S. Bank

National Association ("US Bank"), Mortgage Electronic Registration System ("MERS"), Leopold

& Associates PLLC ("Leopold"), and McCabe, Weisberg & Conway LLC ("McCabe").  Relators

allege violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, on behalf of the United States

of America ("United States").  Amended Complaint ("AC"), ECF 87.  Before the Court are

motions to dismiss filed by: (1) Defendant Ocwen, ECF 113; (2) Defendants HSBC and US Bank

(the "Trust Defendants"), ECF 114; and (3) Defendant McCabe, ECF 119.

        For the following reasons, Defendants' motions to dismiss are granted and this action is

dismissed in its entirety.

## BACKGROUND

### A.  The Home Affordable Modification Program

The 2008 housing crisis, resulting in part from mortgage fraud and predatory lending practices, caused home prices in the United States to plummet and foreclosures to skyrocket, leaving homeowners unable to sell or refinance their homes to meet their mortgage obligations.[1] *See, e.g., Picini v. Chase Home Finance LLC*, 854 F. Supp. 2d 266, 269 (E.D.N.Y. 2012).  In response to the crisis Congress enacted the Emergency Economic Stabilization Act of 2008, which authorized the U.S. Department of Treasury ("Treasury Department") and the Federal National Mortgage Association ("Fannie Mae") to administer the Home Affordable Modification Program ("HAMP").  *See* AC ¶¶ 11, 13; Servicer Participation Agreement, AC Ex. A, ECF 87-1.  HAMP was a voluntary program designed to provide affordable loan modifications and other foreclosure prevention services to eligible borrowers through participating mortgage servicers.  *Id.*; *see* 12 U.S.C. § 5219(a).  The program helped to guarantee that when a mortgage was modified, the modification would not result in a mortgage worth less than the value of the property.  In return, mortgage servicers such as Ocwen would receive HAMP incentive payments from the Treasury Department via Fannie Mae for each successful permanent modification. AC ¶ 14.[2]  The program ended in December 2016.

To obtain a HAMP modification, a borrower would apply directly to their mortgage servicer. *The Making Home Affordable Program*.  If approved, and before a modification would

---

[1] *The Making Home Affordable Program, Dep't of the Treasury,* https://home.treasury.gov/data/troubled-assets-relief-program/housing/mha#:~:text=Program%20Purpose%20and%20Overview&text=Since%20its%20inception%2C%20MHA%20has,%2Din%2Dlieu%20of%20foreclosure (last accessed December 29, 2024).

[2] *See* Jonathan A. Marcantel, *Enforcing the Home Affordable Modification Program*, 70 N.Y.U. Ann. Surv. Am. L. 121, 130 (2014) (citing Home Affordable Modification Program, Supplemental Directive 11-06, Making Home Affordable Program--Updates to Servicer Incentives 1 (2011)); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012) (servicers receive incentive payments for *permanent* loan modifications).

be made permanent, the loan servicer and the borrower would enter a three-month trial period. The modification would become permanent if: (1) the borrower's representations of his or her financial state continue to be true; (2) the borrower complies with the terms of the temporary payment plan; (3) the borrower provides all required documentation; and (4) the lender determines that the borrower qualifies. *See Making Home Affordable Data File User Guide*, at 6, "Exhibit A – The Life of a HAMP 1st Lien Modification," *Dep't of the Treasury*.[3]  Once the borrower successfully completes the trial period, a permanent modification is established and the servicer reports the permanent modification to the HAMP program administrator. *Id.*  The servicer would thereafter receive incentive payments.

Defendant Ocwen participated in the HAMP program by offering loan modifications to defaulting borrowers.  AC ¶ 12; Servicer Participation Agreement.  Ocwen acted as a mortgage loan servicing agent for numerous trusts, including the Fremont Home Loan Trust 2004-B, Asset-Backed Certificates, Series 2004-B (the "HSBC Trust") and the Morgan Stanley Mortgage Loan Trust 2007-11AR, Mortgage Pass-Through Certificates, Series 2007-11AR (the "US Bank Trust"), for which the Trust Defendants served as Trustees.  *See* AC at 2.

### B. Relators' Mortgage Loans and Foreclosure Actions

Relators Irene Ranasinghe ("Irene") and Keerthi Ranasinghe ("Keerthi") entered into separate mortgage loan agreements serviced by Ocwen and secured by separate properties.  AC ¶¶ 25-26, 48-49.

---

[3]https://home.treasury.gov/sites/default/files/initiatives/financial-stability/reports/Documents/MHA%20Data%20File%20User%20Guide%20v12.0.pdf (last accessed December 29, 2024).

### 1.      Lerer Lane Property

On June 5, 2002, Irene obtained a mortgage for $345,000 collaterally secured by her property located at 50 Lerer Lane, Staten Island, NY 10307. *Id.* ¶ 24. On February 20, 2004, Irene obtained a second mortgage for $496,000, which was consolidated with the earlier mortgage. *Id.* ¶ 25. Irene defaulted on the loan, and the servicer, then Litton Loan, issued a notice of default and intent to accelerate the mortgage on September 27, 2011. Ex. E, ECF 87-5. Thereafter, Litton Loan notified Irene that, effective November 1, 2011, the loan would be transferred to Ocwen for servicing. *See* Ex. F, ECF 87-6.

In 2012, the mortgage was assigned to HSBC, as Trustee for the HSBC Trust. AC ¶ 30; Ex. H, ECF 87-8. Thereafter, Irene twice applied for HAMP modifications for her loan. *See* AC ¶ 32. Ocwen denied both applications, stating that Irene was not qualified for the HAMP program. *Id.*

The HSBC Trust commenced a foreclosure action on the property in June 2013 in New York Supreme Court, Richmond County bearing Index No. 130754/2013. *See* Ex. R, ECF 87-18; *HSBC Bank USA et al v. Ranasinghe*, Index No. 130754/2013 (N.Y. Sup. Ct., Richmond Cnty.). Irene made numerous efforts to challenge the foreclosure, which were unsuccessful. *See* AC ¶¶ 38-45.

Relators allege that Ocwen approved Irene for a HAMP trial modification in February 2016. AC ¶ 45; Ex. AA, ECF 87-27. Relators do not allege that Irene ever made payments on the loan thereafter or that Ocwen approved a permanent modification of the loan. Relators assert that "Ocwen took HAMP modification approval from Fannie Mae by submitting fabricated note (sic) . . . and void assignment by MERS an[d] without any signed application from her. Upon

4

information and belief, Ocwen created a false HAMP application and forged Irene's signature on the HAMP application."  AC ¶ 46.

### 2.  Holden Boulevard Loan

On February 13, 2007, Keerthi executed a note in the amount of $380,000 secured by a mortgage on his property located at 224 Holden Boulevard, Staten Island, New York.  AC ¶ 48; Ex. AB, ECF 87-28.  U.S. Bank, Successor-in-Interest to US Bank Trust, commenced a foreclosure action on the Holden Boulevard property in October 2016 in New York Supreme Court, Richmond County bearing Index No. 135822/2016.  AC ¶ 51; *U.S. Bank v. Weerasinge*, Index No. 135822/2016 (NY Sup. Ct., Richmond Cnty.).  Keerthi made numerous attempts to challenge and delay the foreclosure action.  On February 28, 2022, the New York Supreme Court granted a judgment of foreclosure and sale to U.S. Bank.  *U.S. Bank v. Weerasinge*, Index No. 135822/2016, Doc. No. 118.

### C.  Relators' Qui Tam Action

In this action Relators allege that Defendants submitted false claims in violation of 31 U.S.C. § 3729(a)(1)(A), made false statements in violation of 31 U.S.C. § 3729(a)(1)(B), and conspired to submit false claims and make false statements in violation of 31 U.S.C. § 3729(a)(1)(C) to the United States under HAMP.  AC ¶¶ 67-77.  Specifically, Relators assert that "All defendants knowingly presented false claims for payment or approval that directly or indirectly supported the defendants[']" receipt of incentive payments from Fannie Mae under HAMP by, *inter alia*, submitting fabricated documents, false certifications, falsely claiming ownership of Relators' mortgage rights, and submitting false testimony in state court proceedings. AC at 3.

Relators allege that Ocwen, in its role as loan servicer, "presented claims with false information and obtained HAMP approvals and misused the HAMP program," *id.* at 2, that Ocwen "submitted false statements and a false claim certification" to Fannie Mae by submitting "false HAMP applications," *id.* ¶ 22. Relators claim these submissions were false because Ocwen did so "without the ownership of [Relators'] mortgage." *Id.* ¶ 57. Relators also make numerous allegations of fraud in connection with their foreclosure proceedings in state court, including that Ocwen submitted a forged allonge to Relators' mortgage notes, *id.* ¶ 59, 60, created a "fraudulent power of attorney," *id.* ¶ 62, and "filed false affidavits before the Supreme Court of New York," *id.* ¶ 40. Relators assert that these affidavits "violat[ed] the terms of the agreement with Fannie Mae under the HAMP program," but do not state which terms were violated or how. *Id.* Relators claim that "Ocwen also breached agreements with the New York State Department of Financial Services" by initiating foreclosure actions "without proper documents and without having the original Note and Mortgage." *Id.* ¶ 23. However, Relators do not assert how these alleged violations relate to their FCA claims.

In addition to the general allegations stated above, Relators imply that Trust Defendants fraudulently "claimed for the HAMP program that they are Trustees of five trusts claiming that they were lenders owed Mortgage backed security Trusts (sic)." *Id.* at 2. Relators allege that "U.S. Bank defrauded (sic) when [it] filed the HAMP application on behalf of Relator Keerthi." *Id.* ¶ 56. Relators claim that that U.S. Bank did so when "Ocwen[,] as an attorney-in-fact of U.S. Bank[,] endorsed [Relator Keerthi's Mortgage] Note transferring the ownership of 'U.S. Bank National Association' to [the US Bank Trust]." *Id.* The Amended Complaint does not state who the Trust Defendants allegedly defrauded, when, where, or how. Relators also make allegations of fraud against the Trust Defendants in Relators' foreclosure proceedings. Specifically, the

Amended Complaint states that the Trust Defendants "fabricated Mortgage Notes and allonges to create ownership rights through MERS," *id* at 2, *see id.* ¶¶ 54, 59, 60, and that US Bank "created a fraudulent power of attorney," *id.* ¶ 62.  Relators assert the mortgage notes were transferred to "non-existing trusts," but do not explain anything further.  *See id.* at 2-3, ¶¶ 34-35, 41, 54, 56.

Relators allege that "McCabe committed fraud the US Government on Fannie Mae (sic), the agent of the United States Government for supporting the defendants to create ownership of the Mortgages and Notes."  *Id.* at 3.  Relators assert generally that McCabe "colluded to commit violation[s]" of the FCA "by commencing illegal foreclosure actions based on fraudulent documents," *id.* at 4, without stating any relationship to submissions of claims to the United States. Relators claim that McCabe made false statements in connection with Relators' state court foreclosure actions by "submit[ing] false attorney affirmations[,]" *id.* ¶ 55, and "fabricat[ing] the documents" in the second foreclosure complaint against Relator Keerthi.  *Id.* ¶ 60.  Similar allegations are made against Leopold.  *See id.* ¶¶ 35, 38, 40-42.

The Amended Complaint does not provide the dates – or even the range of dates – when Defendants allegedly submitted false claims and statements to the United States or conspired to commit such fraud.

### D.  Procedural History

Relators filed this action on June 30, 2020, and the complaint remained sealed until August 10, 2022, when the United States declined to intervene.  *See* ECF 1, 13, 14.  After delays of service and requests for a premotion conference on intended motions to dismiss by Defendants HSBC, ECF 41, MERS, ECF 42, Ocwen, ECF 43, US Bank, ECF 44, Leopold, ECF 59, and McCabe, ECF 60, the Court dismissed Relators complaint with leave to amend on March 8, 2023 for failure to comply with Rules 8 and 9(b) of the Federal Rules of Civil Procedure.  *See* March, 8, 2023

Order.  Relators filed a second amended complaint under seal on April 6, 2023, *see* ECF 65, 66. The case was reassigned to the undersigned on October 2, 2023.  The United States again declined to intervene, and the second amended complaint was unsealed on October 31, 2023.  ECF 69, 70.

Defendants Ocwen, US Bank, HSBC, MERS, and McCabe requested a pre-motion conference on anticipated motions to dismiss in January 2024.  *See* ECF 74-78.  The Court granted the request, held a pre-motion conference on March 13, 2024, and set a briefing schedule on Defendants' motions to dismiss.

On February 9, 2024, Defendant Leopold filed an answer to the second amended complaint.  *See* ECF 81.  On March 25, 2024, the parties jointly stipulated to dismiss MERS as a defendant to this action.  ECF 86.

Relators refiled their amended complaint on April 5, 2024 (herein referred to simply as the "Amended Complaint").  ECF 87.  Defendants Ocwen, HSBC, US Bank, and McCabe filed their fully briefed motions to dismiss on September 19, 2024.  *See* ECF 113, 114, 119.

### E.  Defendants' Motions to Dismiss

Defendants have filed three separate motions to dismiss for failure to state a claim.  *See* Memorandum of Law in Support of Ocwen's Motion to Dismiss ("Ocwen Mem."), ECF 113-25; Memorandum of Law in Support of HSBC Bank's and US Bank's Motion to Dismiss ("Trust Defs' Mem."), ECF 114-2; Memorandum of Law in Support of McCabe's Motion to Dismiss ("McCabe Mem."), ECF 119-12.  Collectively, Defendants argue the Court must dismiss this case because (1) Relators have not alleged Defendants obtained loan modifications under HAMP, Ocwen Mem. at 13; *see* Trust Defs' Mem.; (2) Relators have failed to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, *id.* at 15, McCabe Mem at 4, *see* Trust Defs' Mem.; (3) Relators' claims are barred by the *Rooker-Feldman* doctrine, Ocwen Mem at 18-21,

McCabe Mem. at 8-9, *see* Trust Defs' Mem.; (4) Relators' claims are time barred, Ocwen Mem. at 21, McCabe Mem. at 11; *see* Trust Defs' Mem.; (5) Relators' claims are released by the settlement agreement reached in *U.S. ex rel. Fisher v. Ocwen Loan Servicing, LLC*, 4:12-CV-543 in the United States District Court for the Easter District of Texas, Ocwen Mem. at 22, *see* Trust Defs' Mem.; (6) Relators' claims are barred by res judicata, McCabe Mem. at 8; and (9) the Court should abstain under the *Colorado River* abstention doctrine, *id.* at 9.

Relators submit lengthy oppositions in response to each. *See* Memorandum of Law in Opposition to Ocwen's Motion to Dismiss ("Ocwen Opp."), ECF 110; Memorandum of Law in Opposition to US Bank's and HSBC'S Motion to Dismiss ("Trust Defs. Opp."), ECF 111; Memorandum of Law in Opposition to McCabe's Motion to Dismiss ("McCabe Opp."), ECF 112. The Court notes that Relators' 36-page memorandum in opposition to Ocwen's motion fails to abide by the procedural rules regarding the length of filings, which limits memoranda of law to 25 pages unless leave is granted to exceed such limit. *See* Individual Practice Rules Section III.F. Moreover, Relators' opposition papers are riddled with typos, grammatical errors, incomplete sentences, and formatting issues that make Relators' arguments difficult to comprehend.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To avoid dismissal on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing FED. R. CIV. P. 8). The facial "plausibility standard is not

akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in the complaint as true. *Id.* But it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Id.*

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Wilson v. Kellogg Co.*, 628 F. App'x 59, 60 (2d Cir. 2016) (quoting *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).

"It is self-evident that the FCA is an anti-fraud stature," and therefore, "claims brought under the FCA fall within the express scope of Rule 9(b)" of the Federal Rules of Civil Procedure. *Wood ex rel. U.S. v. Applied Research Assocs., Inc.*, 328 F. App'x. 744, 747 (2d Cir. 2009); *accord U.S. ex rel. Ladas* v. *Exelis, Inc.*, 824 F.3d 16, 26 (2d Cir. 2016) ("Rule 9(b) principles apply to complaints filed under the False Claims Act."). "To satisfy this Rule, a complaint alleging fraud must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

## DISCUSSION

### A.  The False Claims Act

The FCA "imposes significant penalties on those who defraud the Government," specifically "those who present or directly induce the submission of false or fraudulent claims." *Universal Health Servs., Inc. v. U.S. ex rel Escobar*, 579 U.S. 176, 180-82 (2016). Any person

10

who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" by the United States, 31 U.S.C. § 3729(a)(1)(A), "knowingly makes, uses, or causes to be made or used, a false record or statement material to [such] a false or fraudulent claim," *id.* § 3729(a)(1)(B), or "conspires to commit [such a] violation," may be liable under the FCA, *id.* § 3729(a)(1)(C). A "claim" is defined as "any request or demand . . . for money or property . . . that (i) is presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b)(2)(A); *see Mikes v. Straus*, 274 F.3d 687, 696 (2d Cir. 2001) (interpreting "false claim" as one "aimed at extracting money the government otherwise would not have paid."). The term "knowing" means that a person either "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information," but it does not require "proof of specific intent to defraud." *Id.* § 3729(b)(1)(A), (B). As relevant here, a private person may bring a civil "*qui tam*" action on behalf of the United States as a "relator" for violations of the FCA. 31 U.S.C. § 3730(b).

A § 3729(a)(1)(A) claim must allege facts showing "that defendants (1) made a claim, (2) to the United States, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *Mikes v. Straus*, 274 F.3d 687, 695 (2d Cir. 2001), *abrogated on other grounds by United Health Servs., Inc. v. United States*, 579 U.S. 176 (2016). A § 3729(a)(1)(B) claim "must allege that the defendant (1) created, used, or caused to be used, a record or statement; (2) that is false or fraudulent, (3) knowing of its falsity, (4) to get a false or fraudulent claim paid or approved by the government." *U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist.*, 8 F. Supp. 3d 339, 346 (S.D.N.Y. 2014), *aff'd sub nom. U.S. ex rel. Doe v. New York State Sch. Dists.*, 597 F. App'x 16 (2d. Cir. 2015) (citations omitted). For both claims, a relator

must allege with particularity that Defendants made false claims or statements to the United States and that Defendants knew they were false.

To state a claim of conspiracy to violate the FCA under § 3729(a)(1)(C), a relator must allege that "(1) the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States and (2) one or more conspirators performed any act to effect the object of the conspiracy." *U.S. ex rel. CKD Project, LLC v. Fresenius Med. Care Holdings, Inc.*, 551 F. Supp. 3d 27, 48 (E.D.N.Y. 2021). The first prong requires the relator allege that defendant and the entity who submitted the claim "agreed to defraud the government." *U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 27 (2d Cir. 2016) (quotation marks omitted).

## B. The Complaint Fails to Plead Fraud with Particularity

### 1. The Requirements of Rule 9(b)

Rule 9(b) requires a party "state with particularity the circumstances constituting fraud or mistake." *Ladas*, 823 F.3d at 25 (citations omitted). This means that a complaint alleging fraud must "set forth the who, what, when, where and how of the alleged fraud." *U.S. ex rel. Polansky v. Pfizer, Inc.*, 04-CV-0704 (ERK), 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009) (citations omitted). The purpose of this heightened pleading requirement is "threefold – it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Wood ex rel. U.S. v. Applied Research Assocs., Inc.*, 328 F. App'x 744, 747 (2d Cir. 2009). The Second Circuit rigorously enforces "these salutary purposes of Rule 9(b)." *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990).

There are, however, circumstances where relators may be exempt from "the generally rigid requirement that fraud be pleaded with particularity." *Doe 1* v. *EviCore Healthcare MSI, LLC*,

22-530, 2023 WL 2249577, at *2 (2d Cir. Feb. 28, 2023) (summary order) (citation omitted).  For the relaxed Rule 9(b) standard to apply, a "relator must make allegations that lead to a strong inference that specific claims were indeed submitted and also plead that the particulars of those claims were peculiarly within the opposing party's knowledge."  *U.S. ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 86 (2d Cir. 2017).  Importantly, "th[e] exception to the general rule is not to be mistaken for license to base claims of fraud on speculation and conclusory allegations."  *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990).

### 2.  Failure to Specify False Claims under 31 U.S.C. §§ 3729(a)(1)(A) and (B)

To state a claim under both §§ 3729(a)(1)(A) and (B), Relators must allege with particularity that Defendants made false claims or statements to the United States.

As a threshold matter, Ocwen and the Trust Defendants argue that Relators never allege Defendants submitted false claims to the United States – rather, Relators admit they never agreed to or made payments under any HAMP loan modification.  Ocwen Mem. at 14; *see* Trust Defs' Mem. at 2.[4]  Because Relators do not allege "successful loan modifications," Ocwen argues, they cannot state a claim on the basis that Defendants submitted claims to the United States seeking incentive payments.  *Id.*  Ocwen further argues that Relators' repeated allegations about fraudulent documents and "non-existing" trusts in relationship to the foreclosure actions are irrelevant to Relators' FCA claims because such documents have no relationship to the HAMP modification program.  *Id.* at 14-15.  Rather, Ocwen asserts that it was required to submit loan modifications and payment information to Fannie Mae, *see* AC Exhibit A, at 4 ¶ G, not in any filings during

---

[4] The Trust Defendants' Memorandum of Law states that it adopts and incorporates all arguments set forth in Ocwen's motion.  The parties are represented by the same counsel.  Accordingly, the Court's findings as to Ocwen equally apply to the Trust Defendants.

Relators' foreclosure actions.  *Id.*  Lastly, Ocwen argues Relators' allegation that Ocwen receives incentive payments using fabricated trusts is conclusory and should be disregarded.  *Id.* at 15.

In response, Relators newly allege that Keerthi made trial payments to Ocwen's predecessor Saxson Mortgage ("Saxson") under the HAMP modification program.  Ocwen Opp. ¶¶ 111-115, citing AC Ex. AC; *see generally* AC.  Ocwen and the Trust Defendants reply that Relators may not raise new factual allegations in briefings to cure defects in their operative pleadings,[5] and the Court agrees.  "Plaintiff may not amend his complaint through motion papers and the Court will not consider these newly raised allegations."  *U.S. ex rel. Siegel v. Roche Diagnostics, Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (citation omitted); *accord Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (party is not entitled to amend its complaint through statements made in motion papers); *Rahman v. U.S. Dep't of Homeland Sec.*, 593 F. Supp. 3d 49, 58 (E.D.N.Y. 2022), *aff'd sub nom. Rahman v. Mayorkas*, 22-904-CV, 2023 WL 2398027 (2d Cir. Mar. 8, 2023) (rejecting claims raised for the first time in opposition to a motion to dismiss).

More generally, Defendants argue that Relators fail to plead fraud with particularity because they do not identify specific claims or certifications submitted to the United States but simply make conclusory allegations.  *See* Ocwen Mem. at 17; Trust Defs' Mem. at 3; McCabe Mem. at 6.  Relators make virtually no legal argument in response.  Instead, Relators state hardly intelligible factual allegations and conclusory statements that they have sufficiently plead fraud with particularity.  *See* Ocwen Opp. at 10-11.  This does not constitute adequate briefing in opposition.

---

[5] Ocwen also argues that these newly raised allegations fail to state a claim against it because the alleged payments were made to Saxson, who is not Ocwen's "predecessor."  Ocwen Reply at 2.  Rather, Ocwen argues that it merely acquired Saxson's servicing rights, and therefore Relators have failed to claim Ocwen submitted any false HAMP claims.

The Court agrees with Defendants.  "An FCA complaint must plead specific facts showing that a defendant submitted or caused the submission of a false or fraudulent claim to the government."  *United States v. Medtronic, Inc.*, 18-CV-1628 (KPF), 2024 WL 4165522, at *6 (S.D.N.Y. Sept. 12, 2024) (citing *Chorches*, 865 F.3d at 84).  It is not enough to plead an "underlying scheme[] and other wrongful activities that result in the submission of fraudulent claims," rather Relators must also state "actual false claims submitted to the government that constitute the essential element of an FCA qui tam action."  *Polansky*, 2009 WL 1456582, at *5 (quoting *U.S. ex rel. Karvelas v. Melrose–Wakefield Hosp.,* 360 F.3d 220, 232 (1st Cir. 2004) (without such allegations, there is simply "no actionable damage to the public fisc as required under the [FCA.]")).  Without pleading the "details that identify particular false claims for payment that were submitted to the government" a claim brought under the FCA fails to satisfy Rule 9(b). *U.S. ex rel. Bilotta v. Novartis Pharms. Corp.*, 50 F. Supp. 3d 497, 510 (S.D.N.Y. 2014) (finding that "at least some" of the following details must be plead:  "the dates of the claims, the content of the forms or bills submitted, their identification numbers, the amount of money charged to the government, the particular goods or services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices"); *accord United States v. Cath. Health Sys. of Long Island Inc.*, 12-CV-4425 (MKB), 2017 WL 1239589, at *16-17 (E.D.N.Y. Mar. 31, 2017) (adopting same); *Medtronic*, 2024 WL 4165522, at *6 (plaintiffs must allege particulars of false claims themselves).

In this case, the operative complaint makes conclusory allegations that "all Defendants" made false or fraudulent claims to the United States.  *See* AC at 2-3; ¶¶ 22, 25, 27, 61, 67-74. These allegations do little more than track the language of the subsections of the FCA that were

allegedly violated. They fail to specify the nature or role of each Defendant's alleged participation in the fraud, the specific false claims or certifications at issue, or any other details of the "who, what, when, where, and how of the alleged fraud." *Polansky*, 2009 WL 1456582, at *4 (citation omitted). Further, "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'" in a general manner. *United States v. New York Soc. for the Relief of the Ruptured & Crippled, Maintaining the Hosp. for Special Surger*y, 07-CV-292 (PKC), 2014 WL 3905742, at *19 (S.D.N.Y. Aug. 7, 2014) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* (quoting *DiVittoria v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987)). Relators' blanket allegations of misconduct by "all defendants"— without attributing specific conduct to specific defendant—fail to clear Rule 9(b)'s heightened pleading standard.

Relators' allegations against specific Defendants fare no better. As stated above, Relators allege that "Ocwen had received and upon information and belief, is presently receiving incentive payments using fabricated trusts for and on behalf of HSBC and U.S. Bank by submitting unauthorized claims of Mortgages and Mortgage Notes with fabrication of Mortgage Notes." AC at 3. As against the Trust Defendants, Relators allege that the Trust Defendants asserted "in the HAMP program that they are Trustees of five trusts claiming that they were lenders owned (sic) Mortgage backed security Trusts," *id.* at 2 and that "U.S. Bank defrauded (sic) when they filed the HAMP application on behalf of Relator Keerthi," *id.* ¶ 56. Lastly, Relators baldly allege that "McCabe committed fraud the US Government on Fannie Mae (sic)." *Id.* at 3.

These allegations fail to specify any details that Rule 9(b) requires to plead fraudulent submissions to the United States, including the dates of the alleged fraud or how these claims were submitted.  At its most specific, the Amended Complaint alleges that Trust Defendants filed HAMP applications on behalf of Relator Keerthi.  But, once again, Relators say nothing about claims submitted to the United States for payment.  Relators fail to provide any specific factual allegations to support their contention that the Trust Defendants filed HAMP applications on behalf of Relator Keerthi.  Rather, the allegations "appear[] to rest solely on speculation and conclusory allegations." *U.S. ex rel. Piacentile v. Amgen*, Inc., 336 F. Supp. 3d 119, 132 (E.D.N.Y. 2018) (citations omitted).  As Relators readily admit, HAMP provides incentive payments for *successful* HAMP modifications to *loan servicers.*  AC ¶ 14.  The Trust Defendants are not loan servicers and would not submit HAMP modifications to the United States, and therefore are also not eligible to receive incentive payments. Thus, the allegations lack any facial plausibility.

Further, under the relaxed 9(b) standard, "to survive dismissal under Rule 9(b) when the complaint pleads only on information and belief that fraudulent claims were actually submitted to the United States, a plaintiff must (1) 'make plausible allegations that the bills or invoices actually submitted to the government were uniquely within [the defendant's] knowledge and control,' and (2) 'adduce specific facts supporting a strong inference of fraud.'" *U.S.  ex rel. Gelbman v. City of N.Y.*, 790 F. App'x 244, 248 (2d Cir. 2019) (quoting *Chorches*, 865 F.3d at 83 (quotation marks omitted)); *accord United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020) ("'Rule 9(b) permits knowledge to be averred generally,' but plaintiffs . . . still must 'plead the factual basis which gives rise to a strong inference of fraudulent intent.'" (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991))).  The allegations which rest upon "information and belief" fail to allege that submissions are "uniquely within Defendants' control." *Chorches*, 865 F.3d at 83.

In fact, Relators state that their "case is one that is personally known to them." AC ¶ 22. Relators also do not provide any facts to support a "strong inference" of fraudulent submissions to the United States. "In sum, viewed individually or in the aggregate, Relator[s'] 'evidence and arguments proceed more by insinuation than any factual or statistical evidence that would strengthen the inference' that [Defendants] orchestrated the submission of fraudulent claims to government programs 'beyond possibility.'" *Medtronic*, 2024 WL 4165522, at *10 (quoting *Hagerty ex rel. U.S. v. Cyberonics, Inc.*, 844 F.3d 26, 33 (1st Cir. 2016)).

Finally, a substantial majority of Relators' allegations are that Defendants made false statements and submitted fabricated documents, including fraudulent mortgages and notes, in order to assert foreclosure rights in state court foreclosure proceedings. *See, e.g.* AC ¶¶ 40, 54, 55, 59, 60. Without reaching the propriety of this Court's review of the state court judgments in those cases under the *Rooker-Feldman* doctrine, these allegations plainly fail to state a claim under the FCA. Accepting Relators' allegations as true that Defendants falsified documents in order to obtain title to Relators' properties, such fraud has no plausible connection to any false claims made to the United States seeking payment from the Treasury. *See Mikes*, 274 F.3d at 695. The Supreme Court has repeatedly made clear that "The False Claims Act is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 194 (2016) (quoting *Allison Engine Co v. United States ex rel. Sanders*, 553 U.S. 662, 672 (2008)). Therefore, any alleged frauds perpetrated by Ocwen, HSBC, US Bank, and McCabe in connection with the foreclosure proceedings are not properly pleaded under the FCA in this action.

Accordingly, the Court finds that Relators have failed to allege with particularity false claims or statements submitted to the United States for payment.

### 3.  Failure to Adequately Plead Conspiracy under § 3729(a)(1)(C)

"To state a claim under this subsection, a relator must show that: (1) the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States and (2) one or more conspirators performed any act to effect the object of the conspiracy." *Amgen*, 336 F. Supp. 3d at 136 (citations omitted).  The first prong requires Relators to allege that there was "an agreement to defraud the government between two or more persons coupled with any act to get a false or fraudulent claim allowed or paid."  *U.S. ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 331 (S.D.N.Y. 2004) (citation omitted); *accord Ladas*, 824 F.3d at 27.

The Amended Complaint's only mention of a conspiracy alleges that "Defendants shared one or more acts in furtherance of the conspiracy to defraud the United States and Fannie Mae to receive incentive payments or to support already submitted applications that established ownership of the Mortgages and Mortgage Notes."  AC ¶ 76.  Relators have failed to plead with particularity that Defendants conspired to violate the FCA.  They do not identify any agreement among the Defendants, the object of that agreement, or when such an agreement occurred.  The conspiracy claims are therefore dismissed for failure to state a claim.

### 4.  Claims against Leopold

Relators generally allege that Leopold committed violations of the FCA by submitting "unethical legal opinions" "fraudulent and false affidavits," "false affirmations, and other documents" in connection with Relators' foreclosure actions.  AC at 2-4, ¶¶ 40, 42.

Leopold has not moved to dismiss the Amended Complaint.  However, in response to Plaintiff's initial complaint Leopold filed a pre-motion conference request in anticipation to a motion to dismiss.  ECF 59.  In its request, Leopold argued in part that Relators' complaint lacked

facial plausibility and failed to state a claim with particularity under the FCA, *id.*, the same grounds which the moving Defendants seek to dismiss the claims against them in the instant motion.

Sua sponte dismissal of the claims against Leopold is appropriate here for the same reasons discussed above: Relators have failed to state a claim under the FCA with particularity. The claims against the nonmoving and moving Defendants are virtually identical. "Because the Court's rulings in this Order would apply equally to the [moving and nonmoving] Defendant[s] . . . the Court dismisses the claims against [the nonmoving Defendant] *sua sponte.*" *Malek v. New York Unified Ct. Sys.*, 22-CV-5416 (HG) (RER), 2023 WL 2429528, at *20 (E.D.N.Y. Mar. 9, 2023) (alterations in original), *appeal dismissed* (July 7, 2023), *appeal dismissed* (July 10, 2023), *appeal dismissed* (July 10, 2023), *appeal dismissed* (July 10, 2023) (quoting *Beck v. City of N.Y.*, No. 12-cv-9231, 2014 WL 80544, at *1 (S.D.N.Y. Jan. 3, 2014)). As with the moving Defendants, Relators make no allegations that Leopold submitted, or caused to be made or used for such submission, to the United States for payment – let alone the details of "who, what, when, where and how" the alleged fraud was committed. Relators had ample opportunity to amend the complaint in response to Leopold's and the moving Defendants' initial arguments for dismissal and to respond to the argument that it has failed to state a claim in its amended complaint, but Relators failed to do so. *See Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 n. 6 (2d Cir.1990) (citation omitted) (*sua sponte* dismissal appropriate where issues concerning defendant are essentially the same as those issues faced by defendants whose motions for dismissal were granted; *Wachtler v. County of Herkimer,* 35 F.3d 77, 82 (2d Cir.1994) (a district court may dismiss a complaint *sua sponte* if it fails to state a claim against non-moving defendants).[6]

---

[6] Even if it can be said that Plaintiff's amended complaint and three memorandums of law in opposition to the moving defendants' motions do not constitute an "opportunity to be heard" on its claims against Leopold, the Court would dismiss Relators' claims as frivolous. "A claim is frivolous," thus giving a court the authority to dismiss such a claim, when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *abrogated*

Because the Court dismisses all of Relators' claims for failure to plead with particularity, the Court need not address the other issues raised in Defendants' motions to dismiss.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are granted. Further, the Court dismisses *sua sponte* all claims against defendant Leopold for failure to state a claim upon which any relief may be granted. Accordingly, the action is dismissed in its entirety.

SO ORDERED.

    /s/

ORELIA E. MERCHANT
United States District Judge

March 12, 2025
Brooklyn, New York

---

*on other grounds by Twombly*, 550 U.S. 544. Dismissal without notice is appropriate "where, as here, the frivolousness of a complaint is clear from prior litigation history and so notice serves little purpose." *Curcio v. Abrams*, No. 22-693, 2023 WL 31183, at *2 (2d Cir. Jan. 4, 2023). The Court finds that Relators' allegations that Leopold violated the FCA by making representations during the foreclosure proceedings, *see* AC ¶ 40, is "wholly incredible." *Malek*, 2023 WL 2429528, at *20, n. 28 (quoting *Thomas v. Carter*, 581 F. Supp. 3d 651, 654 (S.D.N.Y. 2022).